# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

ANN ZARCZYNSKI, Individually and on Behalf of All Others Similarly Situated,

        Plaintiff,

v.

TATE & KIRLIN ASSOCIATES, INC. and AXIOM ACQUISITION VENTURES, LLC,

        Defendants.

Case No.: 19-cv-1663

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Ann Zarczynski is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt incurred for personal, family, or household purposes.

5. Defendant Tate & Kirlin Associates, Inc. ("Tate & Kirlin") is a foreign business corporation with its primary offices located at 580 Middletown Blvd., Suite 240, Langhorne, Pennsylvania 19047.

6. Tate & Kirlin is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. Tate & Kirlin is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

8. Tate & Kirlin is a debt collector as defined in 15 U.S.C. § 1692a.

9. Defendant Axiom Acquisition Ventures, LLC ("Axiom") is a foreign limited liability company with its principal place of business located at 12425 Race Track Rd, Ste 100 Tampa, Florida 33626. Its registered agent in Wisconsin is Corporation Service Company, CT Corporation System, 301 S. Bedford St., Suite 1, Madison, WI 53703.

10. Upon information and belief, Axiom purchases, owns and services consumer debts, namely, defaulted consumer credit accounts from lenders.

11. Axiom is engaged in the business of collecting debts, originally owed to others and acquired after default, which were incurred for personal, family or household purposes.

12. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(6) (emphasis added); *see, e.g., Barbato v. Greystone All., LLC*, 916 F.3d 260, 265 (3d Cir. 2019); *Tepper v. Amos Fin., LLC*, 898 F.3d 364, 366 (3d Cir. 2018); *Skinner v. LVNV Funding LLC*, 2018 U.S. Dist. LEXIS 2812, at *7-8 (N.D. Ill. Jan 8, 2018); *Mitchell v. LVNV Funding LLC*, 2017 U.S. Dist. LEXIS 206440, at *7-12 (N.D. Ind. Dec. 15, 2017); *McMahon v. LVNV Funding, LLC*, 2018 U.S. Dist. LEXIS 41984, at *32-38 (N.D. Ill. Mar. 14, 2018); *Torres v. LVNV Funding, LLC*, 2018 U.S. Dist. LEXIS 49885, at *12-15 (Mar. 27, 2018).

13. The primary purpose of Axiom's business, and Axiom's principal purpose, is the collection of consumer debts. *See, e.g.*, *See, Barbato*, 916 F.3d at 267-68; *Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 U.S. Dist. LEXIS 206440 *16 (N.D. Ind. Dec. 15, 2017) ("'[t]here is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them,' and that '[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money'" (citing Pl.'s Reply Br.)).

14. In *Mitchell* and *McMahon*, the Northern District of Indiana and the Northern District of Illinois, respectively, denied the plaintiffs' and the debt buyer's cross motions for summary judgment on the issue of whether the debt buyer was a debt collector, as defined in the FDCPA, holding that determination of the debt buyer's principal purpose is a factual issue that must be left for the jury. *Mitchell*, 2017 U.S. Dist. LEXIS 206440, at *19; *McMahon*, 2018 U.S. Dist. LEXIS 41984, at *32-38.

15. Axiom is a debt collector as defined in 15 U.S.C. § 1692a.

16. A company meeting the definition of a "debt collector" (here, Axiom) is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace*, LLP, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); citing *Pollice*, 225 F.3d at 404-05.

## FACTS

17. On or around February 15, 2019, Tate & Kirlin mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "Axiom Acquisition Ventures, LLC" and originally owed to "First Century Bank." A copy of this letter is attached to this complaint as <u>Exhibit A</u>.

3

18. Upon information and belief, the alleged debt referenced in Exhibit A was incurred by use of a credit card account with First Century Bank, used exclusively for personal, family, or household purposes.

19. Upon information and belief, Exhibit A is a form letter, generated by a computer, and with the information specific to Plaintiff inserted by the computer.

20. Upon information and belief, Exhibit A is a form debt collection letter, used by Tate & Kirlin to attempt to collect alleged debts.

21. Upon information and belief, Exhibit A was the first written communication that Tate & Kirlin mailed to Plaintiff regarding the alleged debt referenced in Exhibit A.

22. The reverse side of Exhibit A contains language that largely reflects the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector send to the consumer along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

23. Exhibit A represents that the "Total Due" of Plaintiff's account was $1307.24 when Exhibit A was mailed.

24. Exhibit A contains the following text:

> ⇨ YOUR OPPORTUNITY ⇦
> Our client has authorized us to offer a discount for 55% of your balance or $718.98 to satisfy this account. (Saving you $588.26)
> Please contact our office at our toll free number should you have any questions or wish to determine if this discount offer can be made in installments.

25. The statement in Exhibit A: "contact our office at our toll free number should you … wish to determine if this discount offer can be made in installments," is false, deceptive, misleading, and confusing to the unsophisticated consumer.

4

26. Although Exhibit A does not expressly provide for any expiration date, the letter implies that the settlement offer is subject to an expiration date because it requires that the consumer call "to determine if this discount offer can be made in installments." If there was no expiration, installment payments would be acceptable.

27. In the absence of an expiration date or other indication of what Tate & Kirlin means by the above language, the unsophisticated consumer would understand the statement above to mean that Tate & Kirlin could, and would, rescind the settlement offer at any time and without notice.

28. The consumer has no way to know from Exhibit A whether Tate & Kirlin and/or the creditor would treat payments of the purported "settlement" amount as an actual settlement (i.e. releasing Plaintiff from any remaining liability) of the alleged debt.

29. An unsophisticated consumer would interpret the statement she must call to determine if the settlement offer is payable in installments to mean that, "if they don't pay by the deadline, they will have no further chance to settle their debt for less than the full amount …." *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775 (7th Cir. 2007), but the consumer would have no idea what the purported deadline is.

30. A false statement that a settlement offer is only available for a limited time is a material false statement because it imparts a false belief in the unsophisticated consumer that he or she must hurry to take advantage of the limited-time opportunity, when in reality, there is no such time limit. *See Nelson-McGourty v. L. & P Fin. Adjusters, Inc.*, 2010 U.S. Dist. LEXIS 81819, *44 (N.D. Ill. Aug. 12, 2010); *see also Ozkaya v. Telecheck Servs.*, 982 F. Supp. 578, 584 (N.D. Ill. Oct. 23, 1997); *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775 (7th Cir. 2007).

31. In order to preserve debt collectors' negotiating positions and prevent the settlement process from disintegrating, while still enforcing the congressional mandate prohibiting debt collectors from making false, deceptive, and misleading representations, the Seventh Circuit has established "safe harbor" language regarding settlement offers in collection letters:

> As in previous cases in which we have created safe-harbor language for use in cases under the Fair Debt Collection Practices Act, we think the present concern can be adequately addressed yet the unsophisticated consumer still be protected against receiving a false impression of his options by the debt collector's including with the offer the following language: "We are not obligated to renew this offer." The word "obligated is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

*Evory v. RJM Acquisitions Funding LLC*, 505 F.3d 769, 775-76 (7th Cir. 2007)

32. Exhibit A fails to include this safe-harbor language.

33. Where the debt collector states that Plaintiff must call to determine if the settlement offer is payable in installments and does not include the safe harbor language "we are not obligated to renew this offer," the unsophisticated consumer would interpret Tate & Kirlin's statement as an implied threat to revoke the settlement offer at any time and without notice.

34. Moreover, Tate & Kirlin's failure to provide an expiration date for its settlement offer is a material misrepresentation because it misleads the unsophisticated consumer about a material term of the settlement offer. *Evory*, 505 F.3d at 775-76; *see also Smith v. Nat'l Enter. Sys., Inc.*, 2017 U.S. Dist. LEXIS 47701, *13 (W.D. Okla. Mar. 30, 2017) (because debt collector's purported time-sensitive settlement offer included an obviously misprinted expiration date that had already passed, "any consumer receiving [it] would be left to wonder about a material term of the offer, that is, the deadline for acceptance."); *Nichols v. Northland Groups, Inc.*, 2006 U.S. Dist. LEXIS 15037, at *19 (N.D. Ill. Mar. 31, 2006) ("Requiring a clear

6

statement of the settlement proposal … will not interfere with the debt collector's freedom to negotiate.").

35. Implying that the settlement offer will expire unless the consumer acts promptly without actually specifying an expiration date is confusing and misleading to the unsophisticated consumer. *Al v. Van Ru Credit Corp.*, No. 17-cv-1738, 2018 U.S. Dist. LEXIS 70321, at *7 (E.D. Wis. Apr. 26, 2018) ("Taking Plaintiff's allegations as true and drawing all reasonable inferences in her favor, it is plausible that an unsophisticated consumer might be misled by the ambiguous nature of the word "promptly."), *parties cross-motions for summary judgment denied by*, 2019 U.S. Dist. LEXIS 6321 (E.D. Apr. 26, 2018).

36. Further, Exhibit A gives no details as to when the settlement offer expires.

37. The consumer has no way to know from Exhibit A whether or for how long Tate & Kirlin or Axiom would treat a payment sent to the listed address as an actual settlement, i.e. releasing Plaintiff from any remaining liability, of the alleged debt, particularly since Exhibit A still represents that the "Total Due" is a different amount, $1307.24.

38. The consequences of misleading a consumer with respect to settling a debt are much greater than misleading about the amount of the debt. A payment of the entire debt would leave pennies or, at most, a few dollars left over for payment later. *See, e.g., Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000). Due to the confusing language in Exhibit A, however, Tate & Kirlin could continue to collect the remaining balance of the alleged debt, despite receiving payment(s) the consumer believed to be settlement payment(s).

39. Tate & Kirlin's misrepresentations are material misrepresentations because they mislead the unsophisticated consumer about the nature of the settlement offer.

7

40. The unsophisticated consumer, not knowing when the settlement offer expired, would feel intimidated into paying before the offer "expired." *Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629 (7th Cir. 2009) ("Confusing language in a dunning letter can have an intimidating effect by making the recipient feel that he is in over his head and had better pay up rather than question the demand for payment.").

41. Providing the settlement offer alongside the validation notice contradicts and overshadows the consumer's validation rights. *See id*.

42. The settlement offer in Exhibit A is confusing to the unsophisticated consumer because the consumer would understand that it required payment during the validation period, but did not explain how the validation notice and settlement "deadline" fit together. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("In the typical case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses.").

43. The unsophisticated consumer, unsure when the settlement offer in Exhibit A expires, would feel compelled to make a settlement payment as soon as possible, and during the validation period, to ensure the settlement offer had not expired without notice prior to her tendering of payment. Thus, there is an apparent contradiction between the settlement offer and the validation notice.

44. The unsophisticated consumer would be confused about whether the settlement offer in Exhibit A would require her to forego her rights to validate the debt.

45. The unsophisticated consumer would not know whether requesting verification of the debt would be interpreted as a rejection of the settlement offer.

8

Case 2:19-cv-01663-LA   Filed 11/12/19   Page 8 of 17   Document 1

46. The plain language of <u>Exhibit A</u> is unclear as to how the debt collector would proceed in the event that the consumer mailed a dispute along with a payment that was intended to accept the settlement offer in the case that the debt could be verified.

47. Where a consumer mailed a dispute along with a payment that was intended to accept a settlement offer in <u>Exhibit A</u>, under the terms of <u>Exhibit A</u>, the debt collector might:

   a. Hold the payment in escrow pending verification of the debt;

   b. Interpret the payment as an accord and satisfaction and settlement in full that contractually bars the consumer from requesting verification of the debt; or

   c. Send the payment back to the consumer pending verification of the debt, in which case the consumer may no longer be able to settle the debt because the offer would have expired while the debt collector was obtaining verification.

48. Where a consumer mails a dispute along with a payment that was intended to accept a settlement offer with an impending expiration date, whether the FDCPA requires a debt collector to proceed along any of the above paths is an open question in the Seventh Circuit. *See Bailey v. TRW Receivables Management Services, Inc.*, 1990 U.S. Dist. LEXIS 19638, *7-8 (D. Haw. Aug. 16, 1990) ("There is nothing in the statute which indicates that a debt collector is not required to provide verification where a consumer requests it after paying the debt.").

49. Whether accepting payment, or even holding payment pending verification, is a "further attempt to collect the debt" is an open question in the Seventh Circuit. *See Sambor v. Omnia Credit Servs.*, 183 F. Supp. 2d 1234, 1243 (D. Haw. Feb. 5, 2002) ("Because the debt collector in *Bailey* had already collected the debt, there was no collection to 'cease' pending validation. In *Bailey*, keeping the consumer's money was tantamount to continuing collection activity.").

50. The unsophisticated consumer would be confused as to whether she had effectively exercised her validation rights by sending a payment along with a dispute letter.

51. The unsophisticated consumer may unwittingly reject a settlement offer by disputing the debt. If the debt collector treated the acceptance of a settlement offer as a continuing attempt to collect a debt, *see Sambor*, 183 F. Supp. 2d at 1243, the debt collector would need to return the settlement payment pending verification of the debt.

52. Or the consumer may unwittingly forego her dispute rights by accepting the settlement offer because the debt collector treated the payment as "resolving the account" notwithstanding the consumer's statutory right to dispute the debt.

53. Moreover, the unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offer in Exhibit A.

54. The consumer needs time to process the information contained in an initial debt collection letter before deciding whether to dispute, pay or take other action. This is the point of the 30 day period in 15 U.S.C. 1692g(a). *See Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 95 (2d Cir. 2008) ("the aim of § 1692g is to provide a period for the recipient of a collection letter to consider her options.").

55. Prior to deciding whether to dispute a debt, a consumer may have to sort through personal records and/or memories to try to remember if the debt might be legitimate. They may not recognize the creditor – debts are freely assignable and corporations, especially banks, often change names.

56. The § 1692g validation period lasts for 30 days. It is the consumer's right to *request* verification until the end of the thirty-day period. If the request is not made until the end of the thirty-day period, the verification request would not be processed, researched by the

10

creditor, and returned to the consumer until long after settlement offer payment deadline has expired. The consumer would be left with no time to review the verification and determine whether to accept the settlement offer.

57. The unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offer in Exhibit A. The unsophisticated consumer would believe that the settlement offer would expire before the debt collector provides verification and would be left with little or no time to review the verification and determine whether to accept the settlement offer.

58. The effect of the settlement offer in the initial written debt communication is to discourage or prevent consumers from exercising their validation rights.

59. Defendant did not include explanatory language in Exhibit A, *see, e.g.*, *Bartlett*, 128 F.3d 497, 501-02 (7th Cir. 1997).

60. Any explanatory language should make clear whether a dispute will extend the settlement offer while the debt collector is in the process of complying with its obligation to verify the debt.

61. Plaintiff was misled and confused by Exhibit A.

62. The unsophisticated consumer would be misled and confused by Exhibit A.

### *The FDCPA*

63. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp. Solutions*, 2018 U.S. Dist. LEXIS 50016, *12, 2018 WL 1513043 (E.D. Wis. March 27, 2018); *Pogorzelski v. Messerli & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of

injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based

12

Case 2:19-cv-01663-LA   Filed 11/12/19   Page 12 of 17   Document 1

upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

64. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

65. Misrepresentations of the character, amount or legal status of any debt, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount

owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

66. 15 U.S.C. § 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

67. 15 U.S.C. § 1692e(5) specifically prohibits debt collectors from making a "threat to take any action that cannot legally be taken or that is not intended to be taken."

68. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

69. 15 U.S.C. § 1692g(a) states:

(a) **Notice of debt; contents**. Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

70. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor. 15 U.S.C. § 1692g(b).

71. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

## **COUNT I – FDCPA**

72. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

73. By including a settlement offer alongside the statement "contact our office at our toll free number should you … wish to determine if this discount offer can be made in installments," Exhibit A includes false, deceptive, and misleading representations because such language indicates the offer is subject to expiration at some unknown date.

74. The above language thus implicitly threatens to rescind the purported settlement offer without warning and thereby overshadows the validation notice.

75. Defendants violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), 1692g(a)(3), 1692g(a)(4), 1692g(a)(5), 1692g(b), and 1692f.

## CLASS ALLEGATIONS

76. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) between November 12, 2018 and November 12, 2019, inclusive, (e) that was not returned by the postal service.

77. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

78. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendants complied with the FDCPA and the WCA.

79. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

80. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

81. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

82. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: November 12, 2019

                                      **ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com